UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TOBY J. ALDRIDGE,

    Plaintiff,

v.                                                      Case No.  8:08-cv-2034-T-30EAJ

JOHN E. POTTER, POSTMASTER
GENERAL, UNITED STATES POSTAL
SERVICE,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Dispositive Motion for Summary Judgment and Memorandum of Law (Dkt. 29) and Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 34).  The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that Defendant's Dispositive Motion for Summary Judgment should be granted in its entirety.

## INTRODUCTION

Plaintiff Toby J. Aldridge ("Plaintiff") filed this action against Defendant John E. Potter, as Postmaster General of the United States Postal Service (the "USPS" or "Defendant"), claiming that Defendant discriminated against him on the basis of physical handicap and age when his start time was changed in October 2007 from 7:00 a.m. to 7:30

a.m. Defendant now moves for summary judgment on Plaintiff's claims, arguing that Plaintiff cannot establish a *prima facie* case of discrimination. Defendant also argues that the record reflects a legitimate, non-discriminatory reason for the change in Plaintiff's start time and that Plaintiff cannot establish pretext.

The Court holds that Plaintiff cannot establish a *prima facie* case of discrimination, under either theory of discrimination, because Plaintiff did not suffer an adverse employment action. The Court also holds that even assuming, for the sake of argument, that Plaintiff could establish a *prima facie* case of discrimination, the record reflects a legitimate, non-discriminatory reason for Defendant's action of changing Plaintiff's start time, and Plaintiff failed to demonstrate pretext.

## FACTUAL BACKGROUND

Plaintiff began his employment at the USPS in 1998 as a letter carrier. Except for the approximate year in which Plaintiff worked at the Hilldale station in 2004, Plaintiff worked exclusively at the Tampa Carriers Annex ("TCA"). On December 16, 2001, Plaintiff underwent hip replacement surgery. After recuperating from the surgery, Plaintiff returned to work around March 2002. Upon his return, the station manager at TCA, Debbie Draga ("Draga"), requested a letter from Plaintiff's doctor regarding whether Plaintiff had any work restrictions following the surgery. Plaintiff's doctor provided a letter, which stated that Plaintiff was restricted from working more than eight hours a day and no more than forty hours a week. In addition, Plaintiff was instructed by his doctor to disengage the lock on his

chair to allow it to swivel when dismounting his postal vehicle, to not carry a satchel, and to not carry objects weighing more than thirty pounds for any distance. Plaintiff testified during his deposition that Draga never required him to work more than 40 hours a week after receiving the letter from Plaintiff's doctor. Plaintiff also stated that he "stay[ed] within the restrictions [his doctor] lined up and the post office had no issue with [it]." Plaintiff's deposition at 73:24-74:1.

Plaintiff testified during his deposition that he was able to perform his duties as a letter carrier within the work restrictions. During this time, Plaintiff was also able to walk, ride bikes, cut grass, and work out. Plaintiff was unable to run, surf, or play tennis. From 2004 through his retirement from the USPS in 2009, Plaintiff had a side business providing lawn services. Plaintiff testified that he personally cut lawns, and was also able to weed-eat, edge, trim small bushes, small trees and palm trees, pull weeds, and clean up debris. Plaintiff provided these services after working a full eight hour day as a letter carrier. Plaintiff stated that the number of lawns he serviced varied, but was around six to ten properties on any given day.

During Plaintiff's employment at the USPS, Plaintiff acknowledged that his start times, i.e., the time that he arrived at work, varied and that management had the right to change his start time up to an hour pursuant to the Collective Bargaining Agreement. Plaintiff testified that there were periods of time when his route start time was changed "it seemed like, every few months." Plaintiff's deposition at 35:6-8. Plaintiff stated that route

start times were changed to make the USPS more efficient. In May 2007, Plaintiff's start time changed from 7:00 a.m. to 7:30 a.m. due to mail volume. Plaintiff testified that his start time fluctuated between 7:00 a.m. and 7:30 a.m. Plaintiff stated that despite the change to 7:30 a.m., he was often permitted to come in at 7:00 a.m. and complete his route within eight hours. Plaintiff stated that he normally gave up a 35 minute trip on his route every Monday, Tuesday, and Wednesday, which means that another letter carrier had to deliver 35 minutes worth of mail on Plaintiff's route.

Plaintiffs' claims of discrimination based on age and disability relate to alleged acts of discrimination that occurred on October 24, 2007 and October 25, 2007. According to Plaintiff's Charge of Discrimination, on October 24, 2007, Draga ordered him to take an additional 35 minutes of mail and deliver it within his eight-hour work restriction or else she would change Plaintiff's start time by 30 minutes and require him to take additional trips on Saturday, within his eight-hour restriction. Plaintiff also stated that Draga yelled at him on the work room floor in front of his peers to "come here" after he had already clocked off for the day. (Dkt. 29-1).

According to Plaintiff's testimony during his deposition and his subsequent affidavit, on October 24, 2007, Plaintiff told his supervisor, Tom Facuette ("Facuette"), that he estimated he could deliver all the mail on his route within eight hours if he left the station by 8:30 a.m. Plaintiff's start time at this time was 7:00 a.m. At the time that Plaintiff gave Facuette his estimation, he had already cased the mail. "Casing" means to sort the mail for

addresses on a route. However, Plaintiff later determined that he would be unable to deliver all the mail on his route within eight hours because he subsequently received additional mail that prevented him from leaving the station at 8:30 a.m. When Plaintiff informed Facuette that he could not get all of the mail delivered in eight hours due to the additional mail, Facuette consulted with Draga who, according to Plaintiff, threatened Plaintiff that if he did not deliver all of the mail within the eight-hour restriction, "everything would change." Plaintiff's affidavit at Dkt. 34-1. Plaintiff was 30 minutes late getting on the street to deliver his mail that day. Also, later that day, Plaintiff brought the additional mail back and Draga informed him that this "changes everything." *Id.*

The next day, on October 25, 2007, Plaintiff was informed that his start time was changed to 7:30 a.m. Upon learning that his start time was changed, Plaintiff filled out a leave slip, noted on it "stress," and remained on paid leave until June 2008. Plaintiff subsequently retired in January 2009.

Plaintiff's complaint alleges that Draga discriminated against him based on his age and physical disability when his start time was changed to 7:30 a.m. on October 25, 2007. Although Plaintiff admitted that Draga did not mention his age or disability, Plaintiff believed that she picked on him, harassed him, and singled him out because of his age and/or disability. According to Facuette's affidavit, who was the person responsible for changing Plaintiff's start time on October 25, 2007, Plaintiff's start time was changed to 7:30 a.m. due to Plaintiff's office performance, leaving late, and requesting assistance every day, with the

exception of Saturdays. Facuette's affidavit also stated that he noticed Plaintiff taking unauthorized breaks and he decided after observing Plaintiff for one week that his office time needed to be changed to a later time to consume the down time of Plaintiff standing around, waiting for mail. Plaintiff admitted that Faucette told him he was changing his start time to 7:30 a.m. because he did not want Plaintiff standing around, waiting on the mail.

This issue is now before the Court on Defendant's Motion for Summary Judgment, filed on March 1, 2010 (Dkt. 29) and Plaintiff's Response to same, filed on March 22, 2010 (Dkt. 34). For the reasons set forth herein, the Court concludes that Defendant's Motion should be granted and judgment should be entered in favor of Defendant and against Plaintiff.

## **LEGAL DISCUSSION**

### I.     **Standard of Review - Motions for Summary Judgment**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action

will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. Plaintiff's Claims of Discrimination

### A. Plaintiff fails to establish a *prima facie* case of disability discrimination because the record does not reflect that Plaintiff suffered an adverse employment action.

"Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir. 2000). Accordingly, "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Id.* at 1305 n. 2. "In order to establish a prima facie case of discrimination under the [Rehabilitation Act], [Plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability." *Id*.

Defendant moves for summary judgment on Plaintiff's disability discrimination claim under the Rehabilitation Act arguing, in part, that the record is clear that Plaintiff did not suffer an adverse employment action. The Court agrees that the change in Plaintiff's start time from 7:00 to 7:30 does not constitute an adverse employment action under the facts of this case.

To satisfy the third element of the *prima facie* case, Plaintiff must show that he suffered an adverse employment action. *Doe v. Dekalb County School District,* 145 F.3d 1441, 1445 (11th Cir. 1998). To meet this requirement, Plaintiff "must show a serious and material change in the terms, conditions, or privileges of employment," *Davis v. Town of Lake Park, Florida,* 245 F.3d 1232, 1239 (11th Cir. 2001), such that "a reasonable person

in [his] position would view the employment action in question as adverse," *Doe,* 145 F.3d at 1449. In general, the factors that can make an employment action adverse include a loss or reduction in pay, responsibility, prestige, or opportunities for professional growth or advancement. *Doe,* 145 F.3d at 1452.

Taking the facts as stated by Plaintiff, the Court cannot conclude that the 30-minute change in his start time from 7:00 a.m. to 7:30 a.m. constituted an adverse employment action. Plaintiff admits that his start time changed frequently. According to Plaintiff's deposition testimony, it was common for start times to fluctuate. Indeed, it is clear from Plaintiff's testimony that his hours changed frequently. Moreover, the record is devoid of any facts demonstrating that any other condition of Plaintiff's employment, such as pay or prestige, was affected by the 30-minute change. Plaintiff also testified to other occasions where he had a 7:30 a.m. start time both before and after the alleged discriminatory incident. These facts are very similar to the facts in *Puckett v. Potter*, 342 F. Supp. 2d 1056, 1067 (M.D. Ala. 2004), where the court held that a one-hour change in the Plaintiff's working hours could not constitute an adverse employment action as a matter of law.

Similarly, although Plaintiff vaguely references Draga's harassment, nitpicking, threats, and singling out of Plaintiff based on his alleged disability,[1] the record is devoid of any specific example of this behavior that would be severe or pervasive enough to constitute

---

[1] Because the Court concludes that Plaintiff did not suffer an adverse employment action, the Court makes no finding as to whether Plaintiff was disabled.

an adverse employment action or a hostile work environment. Importantly, there is no evidence that any of these alleged adverse actions affected Plaintiff's work restriction and Plaintiff admitted during his deposition that Draga never required him to work more than 40 hours a week. Plaintiff also stated that the post office never had any issue with his work restriction.

Accordingly, Plaintiff fails to establish a *prima facie* case of discrimination based on disability and Defendant's Motion for Summary Judgment as to this issue is granted.

> **B. Plaintiff fails to establish a *prima facie* case of age discrimination because the record does not reflect that Plaintiff's age was the "but for" cause of the 30-minute change to Plaintiff's start time.**

The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq., makes it unlawful for an employer to discriminate against any employee "because of" that individual's age. *Id.* § 623(a). "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services, Inc.*, 577 U.S. ----, 129 S.Ct. 2343, 2352, --- L.Ed.2d ---- (2009).

Defendant moves for summary judgment on Plaintiff's age discrimination claim arguing, in part, that the record is clear that Plaintiff's age was not the cause of the change in his start time. The Court agrees. Because the Court already concluded that Plaintiff did not suffer an adverse employment action, summary judgment must be entered in favor of Defendant as a matter of law. However, even assuming, *arguendo*, that the 30-minute

change to Plaintiff's start time constituted an adverse employment action, Plaintiff fails to establish that his age was the "but for" cause of the change. Plaintiff stated during his deposition that he was never told his start time changed because of his age. Moreover, although Plaintiff vaguely claims that Draga singled him out because of his age, he fails to point to any specific conduct or act that would support this broad contention. Indeed, in Plaintiff's Response to Defendant's Motion for Summary Judgment, he does not point to any evidence suggesting that his age was even remotely related to the change in his start time.

Accordingly, Plaintiff fails to establish a *prima facie* case of discrimination based on age and Defendant's Motion for Summary Judgment as to this issue is granted.

> **C.** **Even if Plaintiff established a *prima facie* case of discrimination, the record reflects a legitimate, nondiscriminatory reason in support of Defendant's decision to change Plaintiff's start time and Plaintiff has not demonstrated that the asserted reason is merely pretext for discrimination.**

After a plaintiff has shown a *prima facie* case of discrimination and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).

If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons. *Chapman*, 229 F.3d at 1024-25.

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of discrimination based on age or disability, Defendant offers a legitimate, non-discriminatory reason for changing Plaintiff's start time from 7:00 a.m. to 7:30 a.m. Specifically, Defendant argues that it is entitled to summary judgment on Plaintiff's discrimination claims because Plaintiff's start time was changed due to his office performance, leaving late, requesting assistance, and taking unauthorized breaks.

The record supports Defendant's reason. Plaintiff admitted that he usually gave up a trip, i.e., had another mail carrier deliver a portion of his mail, and that on October 24, 2007, he was unable to deliver all the mail on his route. Plaintiff also stated that his supervisor, Facuette, told him his start time was changing because he did not want Plaintiff standing around, waiting on mail. Plaintiff also acknowledged that during his employment, start times were frequently changed to increase efficiency. For example, Plaintiff stated during his deposition that when he worked at the Hilldale station, the USPS had somebody assist him with casing the mail because he had a big route. He said that they would bring

him in a little bit later, i.e., give him a later start time, so that he could spend more time out on the street delivering the mail. By allowing Plaintiff more time to spend on the street delivering mail, it helped him complete the entire route within his eight-hour restriction.

Having articulated a legitimate, non-discriminatory reason, the burden shifts to Plaintiff to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered legitimate reason. *Combs*, 106 F.3d at 1538. Plaintiff fails to meet this burden. Plaintiff vaguely refers to alleged inconsistencies in the EEO Investigative Affidavit (Dkt. 29-3) and states that he denies Facuette's reason that his start time was changed due to his performance. The law is clear, however, that Plaintiff's own evaluation and opinion is not a sufficient basis to establish pretext. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). Accordingly, summary judgment is granted in favor of Defendant.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Dispositive Motion for Summary Judgment and Memorandum of Law (Dkt. 29) is hereby GRANTED.

2. The CLERK is directed to enter FINAL SUMMARY JUDGMENT in favor of Defendant **JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE** and against Plaintiff **TOBY J. ALDRIDGE**.

3. The CLERK is directed to CLOSE this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on April 8, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2008\08-cv-2034.msj.wpd